**US AIRWAYS AND RELIANCE NA-TIONAL c/o Sedgwick Claims Management Services, Petitioners,**

v.

**WORKERS' COMPENSATION AP-PEAL BOARD (RUMBAUGH), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 22, 2002.
Decided Oct. 21, 2002.

Patricia L. Wozniak, Pittsburgh, for petitioners.

Kevin R. O'Malley, Pittsburgh, for respondent.

BEFORE: SMITH–RIBNER, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

US Airways (Employer) appeals from the order of the Workers' Compensation Appeal Board (Board) which affirmed in part and reversed in part the decision of the Workers' Compensation Judge (WCJ) denying the challenge of Linda Rumbaugh to Employer's notification of suspension pursuant to Section 413(c) of the Workers' Compensation Act (Act).[1] The issue in this case concerns what evidence may be presented in a special supersedeas hearing on an employee's challenge to a unilateral suspension of benefits pursuant to Section 413(c). Employer contends that the Board's narrow interpretation of Section 413(c) deprives it of a fair opportunity to present evidence and to be heard.

Rumbaugh worked as a flight attendant for Employer on August 26, 1999 when she sustained injuries described as an acute cervical trapezius strain and left shoulder contusion and strain after tripping over the feet of another flight attendant during a flight and falling into the galley bulkhead and then to the floor on takeoff. Employer issued a notice of compensation payable, and Rumbaugh began receiving compensation benefits of $511.02 per week. Rumbaugh returned to full duty on October 29, 1999 based on a release to work from her treating physician. On November 1, 1999, Employer filed a notification of suspension of benefits pursuant to Section 413(c) of the Act. Rumbaugh filed a timely chal-lenge to the suspension notice. Rumbaugh took her last flight on November 13, 1999, and she called off sick on November 16 due to low back or lumbosacral problems. Employer filed a suspension petition on December 9, 1999.

The WCJ held a hearing on December 15, 1999 on Rumbaugh's challenge to Employer's notice. Rumbaugh offered into evidence the medical reports from Employer's doctors on her condition, and the WCJ admitted the reports over Employer's objection. Rumbaugh was the only witness to testify; she described the treatment for her injury and her return to work. Rumbaugh also testified that, when she stopped working on November 16, her neck and shoulder were fine but her lower back was sore and her leg had become numb. At the conclusion of the hearing, the WCJ stated that she would reschedule the matter for January and indicated that she would also consider Employer's suspension petition at that time. The WCJ held a second hearing on February 4, 2000, stating at the outset that it was the first hearing on Employer's suspension petition. Both parties offered medical reports into evidence. Rumbaugh again was the only witness to testify.

By order of February 15, 2000 the WCJ denied Rumbaugh's challenge on the grounds that her October 29, 1999 return to work was appropriate and that her reasons for leaving work after November 13 were not related to the work injury reflected in the notice of compensation payable. The WCJ found that Rumbaugh failed to demonstrate by credible evidence that she suffered additional injury not included in the notice of compensation payable, i.e., that Rumbaugh's specific work injury did not include the low back or

**1.** Act of June 2, 1915, P.L. 736, *as amended,* added by Section 2 of the Act of July 1, 1978, P.L. 692, 77 P.S. § 774.2.

lumbosacral injury that Rumbaugh contended was the cause of her inability to work after November 13, 1999.

The WCJ credited a medical report from Dr. John Metcalf, one of Rumbaugh's treating physicians, which was submitted by Employer. The report stated that on November 15, 1999 Rumbaugh was diagnosed with a resolving lumbosacral strain of unknown etiology along with resolved cervical, trapezius and left shoulder contusions and strains. The report further indicated that Rumbaugh stated that she did not injure her lumbosacral region in her initial work injury in August 1999 and that Dr. Metcalf found Rumbaugh vague about the actual etiology of her problem. Because they did not provide any connection between Rumbaugh's symptoms and her work injury, the WCJ did not find helpful the reports submitted by Rumbaugh from Drs. Dennis Mateya and James N. Priola. The WCJ specifically found that no significant question existed concerning a low back injury, and she did not find Rumbaugh's testimony to be credible regarding injury other than as described in the notice of compensation payable.

The Board affirmed in part and reversed in part the decision of the WCJ, determining that the only relevant inquiry was whether Rumbaugh had returned to work at wages equal to or in excess of her pre-injury wage, when she returned to work and the duration of her return to work. The Board affirmed the suspension of Rumbaugh's benefits for the closed period from October 29 through November 13, 1999, but it reversed the WCJ's denial of Rumbaugh's challenge beyond November 13, 1999 and the WCJ's failure to reinstate benefits after that date. The Board noted that Rumbaugh returned to work pursuant to an appropriate medical release, but it decided that the WCJ erred in focusing on the medical evidence as Employer's con-

tention that Rumbaugh discontinued working after November 13, 1999 for non-work-related reasons was irrelevant to her challenge.

■ The Court's review of the Board's decision is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact were supported by substantial evidence. *Hermanson v. Workmen's Compensation Appeal Board (Kasier Aluminum)*, 156 Pa. Cmwlth.556, 628 A.2d 514 (1993). The issue the Court must decide is whether the Board correctly interpreted Section 413(c) of the Act when it held that the only relevant questions before a WCJ in challenge proceedings are whether the employee has returned to work without a wage loss, when the employee returned to work and the length of time that the employee remained working.

Section 413(c) of the Act governs the procedures when an employer seeks to suspend benefits, without the filing of a formal suspension petition, after an employee returns to work with no wage loss and when an employee seeks to challenge the employer's notification of suspension. Section 413(c) provides:

Notwithstanding any provision of this act, an insurer may suspend the compensation during the time the employe has returned to work at his prior or increased earnings upon written notification of suspension by the insurer to the employe and the department, on a form prescribed by the department for this purpose. The notification of suspension shall include an affidavit by the insurer that compensation has been suspended because the employe has returned to work at prior or increased earnings. The insurer must mail the notification of suspension to the employe and the de-

partment within seven days of the insurer suspending compensation.

(1) If the employe contests the averments of the insurer's affidavit, a special supersedeas hearing before a workers' compensation judge may be requested by the employe indicating by a checkoff on the notification form that the suspension of benefits is being challenged and filing the notification of challenge with the department within twenty days of receipt of the notification of suspension from the insurer. The special supersedeas hearing shall be held within twenty-one days of the employe's filing of the notification of challenge.

(2) If the employe does not challenge the insurer's notification of suspension within twenty days under paragraph (1), the employe shall be deemed to have admitted to the return to work and receipt of wages at prior or increased earnings. The insurer's notification of suspension shall be deemed to have the same binding effect as a fully executed supplemental agreement for the suspension of benefits.

Employer correctly notes that Section 413(c) does not explicitly define the parameters for special supersedeas hearings. Employer contends that inconsistency reigns in proceedings before the WCJs and the Board under the new procedures.

Employer argues that the Board's narrow interpretation of Section 413(c) denied Employer an opportunity to present evidence to establish that it appropriately suspended Rumbaugh's benefits, and Employer asserts that it should be permitted to present evidence on the underlying reason or cause for Rumbaugh's inability to work and whether that inability was related to her occupational injury. The Board determined that once Rumbaugh established that she was no longer employed after November 13, 1999 she was entitled

to have her benefits reinstated regardless of the reason that she stopped working. Employer maintains that it had a right to be heard to establish that Rumbaugh was not entitled to have her benefits reinstated despite the fact that she was no longer working.

Employer contends that it should be permitted to present evidence to establish that it is entitled to a supersedeas in accordance with Section 131.49 of the Special Rules of Administrative Practice and Procedure Before Referees, 34 Pa.Code § 131.49. Section 131.49 pertains to the disposition of automatic requests for special supersedeas. The regulation directs the workers' compensation judge to approve the Employer's request for supersedeas "if prima facie evidence of a change in the medical status or of any other fact which would serve to modify or terminate the payment of compensation is submitted at the hearing, unless the employe establishes by a preponderance of the evidence a likelihood of prevailing on the merits of the employe's defense." 34 Pa.Code § 131.49(c). In making this determination the WCJ may consider: (1) report of a physician; (2) testimony of a party or witness; (3) records of a physician, hospital or clinic or other similar entity; (4) written statements or reports of another person to be called by a party at hearing; and (5) any other evidence that may be relevant to the request for special supersedeas. *Id.*

Rumbaugh counter-argues that Employer failed to file a petition to suspend and therefore it was bound by the limited scope of the WCJ hearing to whether Rumbaugh was actually working and earning wages after November 13, 1999. Relying on the humanitarian and liberal construction of the Act, Rumbaugh asserts that under Section 413(c) she must be accorded every benefit of the doubt and that had the WCJ followed this require-

ment she would have reinstated Rumbaugh's benefits once she found that Rumbaugh was no longer working and earning wages. Further, the Board was correct in determining that the reason she stopped working is irrelevant in challenge proceedings. Rumbaugh maintains that the statute is clear and unambiguous: if the employer fails to demonstrate that an injured worker is actually working and earning wages, then benefits must continue. According to Rumbaugh, no other inquiry is allowed, and the Board properly concluded that the WCJ committed an error of law.

The plain language of Section 413(c) allows an employer to unilaterally "suspend the compensation during the time the employe has returned to work at his prior or increased earnings upon written notification of suspension by the insurer to the employe and the department...." Thus the unilateral suspension allowed by Section 413(c) is limited to the time period during which the employee has returned to work at his or her prior earnings. If an employee is no longer at work at his or her prior earnings, the Section does not permit the employer to unilaterally suspend benefits. Nevertheless, the Court cannot agree with the Board's conclusion that a special supersedeas hearing pursuant to a challenge under Section 413(c) is limited to the questions of whether the employee has returned to work without a wage loss, when the employee returned to work and the length of time that the employee remained working.

◼ The Court finds more persuasive the Board's reasoning in *Webb v. Haddon Craftsman* (No. A97–0851, filed May 5, 2000). The Board reasoned in *Webb* that Section 413(c) has a two-fold purpose: first, it allows a claimant to return to work without jeopardizing the receipt of benefits when the claimant is unable to perform the job due to the work injury, and second, it

avoids an unnecessary hearing when there is no dispute that the claimant has returned to work. When a claimant files a challenge, the purpose of the special supersedeas hearing is to determine whether the unilateral suspension of benefits will remain in effect. In the hearing, the WCJ must determine whether the employer was entitled to a supersedeas as of the date on which the claimant's benefits were unilaterally suspended. The claimant's challenge effectively converts the employer's notification of suspension into a request for supersedeas. This approach is most consistent with the longstanding rule in workers' compensation cases that the form of a petition should not be controlling. *See General Refractories Co. v. Workmen's Compensation Appeal Board (Wright)*, 535 Pa. 306, 635 A.2d 120 (1993); *Johnson v. Workers' Compensation Appeal Board (Budd Co.)*, 693 A.2d 1015 (Pa.Cmwlth. 1997). Given the well-established principle that the Act is to be liberally construed to effectuate its humanitarian objectives, *General Refractories*, it makes no sense to require a WCJ to turn a blind eye to evidence that the employer is entitled to a supersedeas when all of the parties are already assembled before him or her for an expedited hearing.

It is fundamental that in any proceeding under the Act the parties have a right to be heard, and the Court cannot perceive of any circumstance under which the legislature intended to deprive either party an opportunity to be heard in the challenge proceedings. When interpreting legislative intent, the Court is bound by certain well-established principles. They include the rule that statutes shall not be interpreted to effect an absurd result and that statutes should be given common sense and rational meanings. *See* Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922; *MacElree v. Chester County*, 667

A.2d 1188 (Pa.Cmwlth.1995). Accordingly, the Court concludes that the WCJ properly allowed evidence from both parties in these proceedings and appropriately reviewed that evidence in making her determination.

Turning now to the instant case, there is no dispute that Rumbaugh stopped working on November 13, 1999, and after that date Employer could not unilaterally suspend her · benefits pursuant to Section 413(c) of the Act. This does not end the inquiry however. As explained by the Board in *Webb*, Rumbaugh's filing of the challenge converted Employer's notice of suspension into a request for supersedeas, and therefore the WCJ was required to determine whether Employer was entitled to a supersedeas as of November 13, 1999.[2] The WCJ was persuaded by credible evidence that Rumbaugh was able to return to work, and the WCJ was not persuaded that Rumbaugh's cessation of work was related to her work injury. Thus Employer provided prima facie evidence of a change in Rumbaugh's medical status that would serve to modify the payment of compensation, and the WCJ did not err when she denied Rumbaugh's challenge based on the medical evidence presented. Accordingly, Employer was entitled to a superse-

deas as of November 13, 1999. Employer is left with an outstanding suspension petition that must still be litigated at a full hearing before the WCJ. The Court therefore reverses the Board's decision to reverse the denial of Rumbaugh's challenge and remands the matter for proceedings in accordance with the foregoing opinion.

## ORDER

AND NOW, this 21st day of October, 2002, the order of the Workers' Compensation Appeal Board is hereby reversed in part, and the matter is remanded for proceedings in accordance with the foregoing opinion.

Jurisdiction is relinquished.

DISSENTING OPINION BY Senior Judge KELLEY.

I respectfully dissent.

In reversing the Board's order in this case, the majority relies upon the Board's reasoning in *Webb v. Haddon Craftsman* (No. A97–0851, filed May 5, 2000), and adopts the proposition that "[t]he claimant's challenge [to a unilateral suspension of compensation benefits under Section 413(c) of the Workers' Compensation Act (Act) ][1] effectively converts the employer's

---

**2.** The WCJ must decide whether Employer is entitled to a suspension of benefits beyond November 13, 1999 or, stated another way, whether the unilateral suspension of Rumbaugh's benefits should be lifted. This determination was required regardless of the applicability of provisions relating to the employer's automatic request for special supersedeas under Section 131.49 of the Board's regulations or of provisions relating to the employee's request for a special supersedeas hearing under Section 131.50a, 34 Pa.Code § 131.50a.

**1.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 774.2, *added by* the Act of July 1, 1978, *as amended*. Section 413(c) states the following, in pertinent part:

Notwithstanding any provision of this act, an insurer may suspend the compensation during the time the employe has returned to work at his prior or increased earnings upon written notification of suspension by the insurer to the employe and the department, on a form prescribed by the department for this purpose. The notification of suspension shall include an affidavit by the insurer that compensation has been suspended because the employe has returned to work at prior or increased earnings. The insurer must mail the notification of suspension to the employe and the department within seven days of the insurer suspending compensation.

(1) If the employe contests the averments of the insurer's affidavit, a special supersedeas hearing before a workers' compensation

notification of suspension into a request for supersedeas." Majority Opinion at 8. The majority also relies upon Section 131.49 of the Department's regulations[2], governing hearings on an employer's automatic request for a supersedeas, to conclude that any and all evidence relevant in a hearing on such a request may be used in a hear-

ing conducted pursuant to Section 413(c). *See* Majority Opinion at 1067–69.

However, the majority's opinion ignores the factual and procedural distinctions between these differing requests for a supersedeas. Pursuant to Section 413(a) of the Act,[3] a WCJ may, at any time, modify,

---

judge may be requested by the employe indicating by a checkoff on the notification form that the suspension of benefits is being challenged and filing the notification of challenge with the department within twenty days of receipt of the notification of suspension from the insurer. The special supersedeas hearing shall be held within twenty-one days of the employe's filing of the notification of challenge.

77 P.S. § 774.2(1).

2. Section 131.49 of the regulations states:

(a) The filing of a petition alleging full recovery, accompanied by a physician's affidavit to that effect, which was prepared in connection with an examination of the employe no more than 21 days from the filing of the petition, shall act as an automatic request for supersedeas.

(b) A special supersedeas hearing will be held within 21 days of the assignment of the petition filed under this section.

(c) The workers' compensation judge shall approve the request for supersedeas if prima facie evidence of a change in the medical status or of any other fact which would serve to modify or terminate the payment of compensation is submitted at the hearing, unless the employe establishes by a preponderance of the evidence a likelihood of prevailing on the merits of the employe's defense. In making this determination the workers' compensation judge shall consider the physician's affidavit alleging full recovery and may consider the following:

(1) The report of the physician.

(2) The testimony of a party or witness.

(3) The records of a physician, hospital or clinic or other similar entity.

(4) The written statements or reports of another person expected to be called by a party at the hearing of the case.

(5) Other evidence relevant to the request for supersedeas.

(d) If the judge to whom the special supersedeas request has been assigned fails to hold a hearing within 21 days of assignment of the

request to the judge or fails to issue a written order within 7 days of the hearing of the supersedeas request, the automatic request for supersedeas shall be deemed denied. The automatic request for supersedeas shall remain denied until the judge issues a written order granting the supersedeas, in whole or in part.

3. Section 413(a) of the Act provides, in pertinent part:

A workers' compensation judge may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such workers' compensation judge, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

77 P.S. § 771.

Section 413(a) also provides, in pertinent part:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed ... And provided further, That where compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that

reinstate, suspend, or terminate a claimant's compensation benefit awarded pursuant to a notice of compensation payable, an original or supplemental agreement or an award of the WCJ, upon the filing of a petition by either party. Pursuant to Section 413(a.1) [4] of the Act, the filing of such a petition acts as an automatic request by an employer for a supersedeas where the petition alleges that the claimant is fully recovered and it is accompanied by a physician's affidavit to that effect. Section 413(a.1) further provides that, at the hearing on this automatic request for a special supersedeas, "[a]ll parties to the special supersedeas hearing shall have the right to submit, and the [WCJ] may consider testimony of any party or witness; the record of any physician; the records of any physician, hospital, clinic or similar entity; the written statements or reports of any other person expected to be called by any party at the hearing of the case; and any other relevant materials." 77 P.S. § 774(1). Thus, the provisions of Section 131.49 of the regulations merely mimic the provisions of Section 413(a.1) of the Act regarding what evidence is relevant and admissible in such a proceeding.

In addition, and quite importantly, Section 413(a.1) also provides that an employer is entitled to such a supersedeas from the payment of compensation benefits only when it establishes "[p]rima facia [sic] evidence of a change in the medical status or of any other fact which would serve to modify or terminate payment of compensation ...", and only if the claimant fails to establish "[b]y a preponderance of the evidence, a likelihood of prevailing on the merits of his defense ..." 77 P.S. § 774(1). This provision is in line with the general proposition that once an employer has accepted liability for a work-related injury, it may not cease the payment of compensation benefits in the absence of a supplemental agreement, a final receipt or a WCJ's order. *See, e.g., Gillis v. Workers' Compensation Appeal Board (Willits Roofing, Inc.),* 725 A.2d 257, 259–260 (Pa. Cmwlth.1999) ("[T]he law is well settled that an employer who is obligated to pay a claimant benefits can cease paying benefits if it satisfies any of the following condi-

payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

77 P.S. § 772.

4. Section 413(a.1) of the Act provides, in pertinent part:

(1) The filing of a petition to terminate, suspend or modify a notice of compensation payable or a compensation agreement or award as provided in this section shall automatically operate as a request for a supersedeas to suspend the payment of compensation fixed in the agreement or the award where the petition alleges that the employe has fully recovered and is accompanied by an affidavit of a physician on a form prescribed by the department to that effect, which is based upon an examination made within twenty-one days of the filing of the petition. A special supersedeas hearing before a workers' compensation judge shall be held within twenty-one days of the assignment of such petition. All parties to the special supersedeas hearing shall have the right to submit, and the workers' compensation judge may consider testimony of any party or witness; the record of any physician; the records of any physician, hospital, clinic or similar entity; the written statements or reports of any other person expected to be called by any party at the hearing of the case; and any other relevant materials. The workers' compensation judge shall rule on the request for supersedeas within seven days of the hearing and shall approve the request if prima facia evidence of a change in the medical status or of any other fact which would serve to modify or terminate payment of compensation is submitted at the hearing, unless the employe establishes, by a preponderance of the evidence, a likelihood of prevailing on the merits of his defense ...

77 P.S. § 774(1).

tions: (1) submits a supplemental agreement pursuant to Section 408 of the Act, 77 P.S. § 732; (2) submits a final receipt signed by the claimant pursuant to Section 434 of the Act, 77 P.S. § 1001; (3) secures an interlocutory order from a WCJ granting a discretionary supersedeas pursuant to Sections 413(a.1) and 413(a.2) of the Act, 77 P.S. § 774; (4) files a petition to suspend compensation with an accompanying affidavit from the insurer that the claimant has returned to work at wages greater than or equal to his pre-injury wage pursuant to Section 413(c) of the Act, 77 P.S. § 774.2; or (5) secures a final order from a WCJ terminating a claimant's benefits. *Sheridan v. Workers' Compensation Appeal Board (Anzon, Inc.)*, 713 A.2d 182 (Pa.Cmwlth.1998). Until one of the above events occurs, an employer is under a continuing obligation to pay a Claimant benefits properly owed to him. *Id.*").

In contrast, Section 413(c) of the Act confers upon an employer the power to unilaterally suspend a claimant's compensation benefits, without a prior hearing or a WCJ's determination, based upon an allegation that the claimant has returned to work at his prior or increased wages. Subsection (1) of Section 413(c) permits the claimant to challenge this unilateral suspension by requesting a special supersedeas hearing. Unlike Section 413(a.1), Section 413(c) does not contain any all-encompassing evidentiary provision. This is quite logical as the factual allegations underlying a Section 413(c) are extremely limited; namely, the claimant's return to work at his prior or increased wages.

Section 131.50a of the Department's regulations[5] govern hearings conducted pursuant to Section 413(c). Again, and quite logically, the provisions of Section 131.50a of the regulations are not as extensive as those of Section 131.49 due to the limited evidentiary questions at issue in such a hearing. As noted above, the only relevant evidence in such a proceeding is that relating to the issue of whether or not the claimant has returned to work at his prior or increased wages. By applying the provisions of Section 131.49 to a proceeding under Section 413(c), the majority ignores the specific provisions of Sections 413(a.1) and (c) of the Act and Sections 131.49 and 131.50a of the regulations, and the factual allegations underlying these quite distinct proceedings.

As noted by the majority, it is true that "[t]he longstanding rule in workers' compensation cases that the form of a petition should not be controlling. *See General Refractories Company v. Workmen's Compensation Appeal Board (Wright)*, 535 Pa. 306, 635 A.2d 120 (1993); *Johnson v. Workers' Compensation Appeal Board (Budd Co.)*, 693 A.2d 1015 (Pa.Cmwlth. 1997)." Majority Opinion at 8. However, as this Court has also noted:

> (c) The workers' compensation judge to whom the notice of challenge has been assigned will issue a written order on the challenge within 14 days of the hearing.
> (d) If the judge fails to hold a hearing within 21 days or fails to issue a written order approving the suspension or modification of benefits within 14 days of the hearing, the insurer shall reinstate the employe's workers' compensation benefits at the weekly rate the employe received prior to the insurer's suspension or modification of benefits under section 413(c) or (d) of the act.

**5.** 34 Pa.Code § 131.50a. Section 131.50a of the regulations states:

> (a) This section governs the disposition of an employe's request for a special supersedeas hearing made in connection with a challenge to the suspension or modification of workers' compensation benefits under section 413(c) and (d) of the act (77 P.S. §§ 774.2 and 774.3).
> (b) A special supersedeas hearing will be held within 21 days of the employe's filing of the notice of challenge.

[W]e have consistently construed Section 413 to effectuate the principle that the form of the petition filed is not controlling where the facts justify relief *for a claimant.* [*Boehm v. Workmen's Compensation Appeal Board (United Parcel Services),* 133 Pa.Cmwlth.455, 576 A.2d 1163 (1990)]. The Act is remedial in nature and is intended to benefit the worker. Accordingly, we must liberally construe the Act to effectuate those humanitarian objectives.

*Coover v. Workmen's Compensation Appeal Board (Browning–Ferris Industries of Delaware Valley),* 140 Pa.Cmwlth.16, 591 A.2d 347, 349 (1991) (emphasis in original).

Where, as in this case, an employer seeks a suspension, modification or termination of a claimant's disability benefits for reasons unrelated to those encompassed in Section 413(c) of the Act, that employer should be required to file the appropriate petition under Section 413(a) and to proceed accordingly. By opening a Section 413(c) hearing to irrelevant issues and evidence, the majority would allow an employer to unilaterally suspend a claimant's disability benefits under Section 413(c), only to proceed on a different Section 413(a) theory at the hearing. All the while, the claimant's benefits have been suspended, and the employer has availed itself of a supersedeas to which it is not entitled. In short, Section 413(c) provides a very limited form of self-help to employers based upon a very limited factual predicate. I firmly believe that the majority has erred in expanding the provisions of Section 413(c) beyond these quite limited boundaries.

Accordingly, unlike the majority, I would affirm the Board's order in this case.